**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**CASE NO. _____**

MARKEL AMERICAN INSURANCE
COMPANY,

        Plaintiff,

v.

CHARLES D. OLIVER; HIDDEN
WEALTH MANAGEMENT, LLC;
AMERICAN EQUITY ADVISORY
GROUP, LLC; GARY GIORDANO;
ALAN MANSFIELD; KATHLEEN
WIDICK; RAYMOND WIDICK; JAMES
HALL; CHERYLL HALL; NATIONAL
LIFE GROUP,

        Defendants.

_____/

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, MARKEL AMERICAN INSURANCE COMPANY ("MAIC" or "Plaintiff"),

by and through its undersigned counsel, and pursuant to 28 U.S.C. § 2201 and Rule 57 of the

Federal Rules of Civil Procedure, hereby files this Complaint seeking a Declaratory Judgment

against Defendants, CHARLES D. OLIVER ("Oliver"), HIDDEN WEALTH MANAGEMENT,

LLC ("HWM"), AMERICAN EQUITY ADVISORY GROUP, LLC ("AEAG"), GARY

GIORDANO ("Giordano"), ALAN MANSFIELD ("Mansfield"), KATHLEEN WIDICK and

JAMES WIDICK (the "Widicks"), JAMES HALL and CHERYLL HALL (the "Halls")  and

NATIONAL LIFE GROUP ("NLG") (collectively referred to as the "Defendants") and states as

follows:

CASE NO. _____

## INTRODUCTION

1.      In this action, MAIC seeks a declaration that: (a) it does not owe a duty to defend or indemnify Oliver, HWM or AEAG (collectively referred to as the "Insureds") in a lawsuit captioned *Gary Giordano, et. al. v. Charles D. Oliver, et. al.*, Case No. 2020-CA-000548-15-L, filed in the Circuit Court of the Eighteenth Judicial Circuit in and for Seminole County, Florida (the "Giordano Lawsuit");[1] and (b) that it does not owe a duty to defend or indemnify Oliver or HWM in a lawsuit captioned *James Hall, et. al. v. Charles D. Oliver, et. al.*, Case No. 16-2019-CA-003402-XXXX-MA, filed in the Circuit Court of the Fourth Judicial Circuit in and for Duval County, Florida (the "Hall Lawsuit").[2]

2.      MAIC issued a Company Sponsored Life Insurance Agents Professional Liability Policy to NLG bearing policy number MKLM7PLCA00016 for the policy period of May 1, 2019 to May 1, 2020 (the "Policy").[3] Oliver qualifies as an "Agent" under the Policy based on his agent contract with NLG, and is therefore an Insured. HWM and AEAG are companies Oliver has an ownership interest in, and are therefore Insureds solely with respect to their liability for Wrongful Acts by Oliver. The Policy has liability limits of $1 Million per occurrence and $2 Million in the aggregate with respect to each Agent.

3.      As shown below, both the Giordano Lawsuit and the Hall Lawsuit allege that Oliver – individually and through his business entities, AEAG and/or HWM – recommended an investment strategy that involved purchasing an investment product from a now defunct company named Future Income Payments, LLC ("FIP") and using the revenue stream from the FIP investment to pay premiums on life insurance policies. (*See* Exhibit A, ¶ 15-28; Exhibit B, ¶ 14-18, 20, 22 and 25).

---

[1] The operative Complaint in the Giordano Lawsuit is attached hereto as Exhibit A.
[2] The operative Complaint in the Hall Lawsuit is attached hereto as Exhibit B.
[3] A copy of the Policy is attached hereto as Exhibit C.

CASE NO. _____

4.     Two earlier lawsuits brought against Oliver and HWM and/or AEAG are premised on the same investment strategy: *Gordon R. Edwards, et. al. v. Charles D. Oliver, et. al.,* Case No. 2019-CA-003341 (the "Edwards Lawsuit"),[4] filed in the Circuit Court in and for Duval County, Florida on May 1, 2019; and *John Richardson, et. al. v. Charles D. Oliver, et. al.,* Case No. 2018-CA-6721 (the "Richardson Lawsuit"),[5] filed in the Circuit Court in and for Duval County, Florida on September 28, 2018.

5.     The Richardson Lawsuit was commenced prior to the inception of the Policy.

6.     MAIC avers that the Giordano Lawsuit, the Hall Lawsuit, the Edwards Lawsuit and the Richardson Lawsuit (collectively referred to as the "Underlying Lawsuits") all constitute a single Claim, and that the Policy does not provide coverage – defense or indemnity – for any of the Underlying Lawsuits for all of the reasons discussed herein.

7.     There is a justiciable controversy concerning the rights and obligations of the parties under the Policy as Oliver, HWM and AEAG (collectively the "Insureds") contend that MAIC has a duty to defend and indemnify them in connection with the Giordano Lawsuit and the Hall Lawsuit, while MAIC avers that it has no duty to defend or indemnify the Insureds pursuant to the various terms, conditions, exclusions and endorsements of the Policy.

## **PARTIES**

8.     Plaintiff, MAIC, is an insurance company which is incorporated in the State of Illinois and has its principal place of business located in Glen Allen, Virginia. MAIC is therefore a citizen of Illinois or Virginia for purposes of subject matter jurisdiction.

9.     Defendant, Oliver, is an individual domiciled in the State of Florida, and is a citizen of Florida. He is the owner and sole principal of HWM and AEAG.

---

[4] *See* Complaint in the Edwards Lawsuit, attached hereto as Exhibit D, at ¶ 14-15, 18-21, 23-24 and 27-30.
[5] *See* Amended Complaint in the Richardson Lawsuit, attached hereto as Exhibit E, at ¶ 15-23.

CASE NO. _____

10.     Defendant, HWM, is a Florida limited liability company which has its principal place of business located in Lake Mary, Florida. Oliver, who is a citizen of Florida, is the sole Member of HWM. Accordingly, HWM is a citizen of Florida for purposes of subject matter jurisdiction.

11.     Defendant, AEAG, is a Florida limited liability company which has its principal place of business located in Lake Mary, Florida.  Oliver, who is a citizen of Florida, is the sole Member of AEAG. Accordingly, AEAG is a citizen of Florida for purposes of subject matter jurisdiction.

12.     Defendant, Giordano, is an individual domiciled in the State of Florida, and is a citizen of Florida.

13.     Defendant, Mansfield, is an individual domiciled in the State of Florida, and is a citizen of Florida.

14.     Defendants, the Widicks, are individuals domiciled in the State of Florida, and are citizens of Florida.

15.     Defendants, the Halls, are individuals domiciled in the State of Florida, and are citizens of Florida.

16.     Defendant, NLG, is a life insurance company which is incorporated in the State of Vermont and has its principal place of business located in Montpelier, Vermont. NLG is therefore a citizen of Vermont for purposes of subject matter jurisdiction.

17.     Defendants, Giordano, Mansfield, the Widicks, the Halls and NLG, are interested parties who have been properly included as defendants in order to bind them to the result of this action.

CASE NO. _____

18.     All conditions precedent to the filing of this Complaint for Declaratory Judgment have occurred, been performed, or have been waived.

### JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity of citizenship between the Plaintiff and all of the Defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

20.     This Court has personal jurisdiction over the Defendants because they are residents of, or conduct substantial business in, Florida.

21.     Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391 because this district is where the events or omissions giving rise to this action occurred. The Giordano Lawsuit is proceeding in the Circuit Court of the Eighteenth Judicial Circuit in and for Seminole County, which is situated within this district. The Hall Lawsuit is proceeding in the Circuit Court of the Fourth Judicial Circuit in and for Duval County, which is situated within this district. Oliver's companies, HWM and AEAG, have their principal place of business in Lake Mary, Florida, which is in this district, and a substantial part of the events at issue in the Giordano Lawsuit and the Hall Lawsuit occurred in Lake Mary, Florida.

### THE UNDERLYING LAWSUITS

22.     The Underlying Lawsuits are closely related. Each alleges that Oliver – individually and/or through one or more of his businesses – induced the respective Plaintiffs to pursue an investment plan that involved purchasing FIP investments and life insurance policies, and using the income stream from the FIP investment to pay premiums on the life insurance policies. Each Plaintiff alleges that FIP was a fraudulent enterprise that stopped making

**CASE NO. _____**

payments to investors in 2018, and that he or she has been damaged as a result of Oliver's recommendation and sale of the FIP investment.

### a.    The Giordano Lawsuit

23.    The Plaintiffs in the Giordano Lawsuit allege that Oliver recommended a two-step investment plan that involved purchasing FIP investments and using the income stream from the FIP investment to pay premiums on life insurance policies. (*See* Exhibit A, ¶ 15).

24.    The Complaint alleges that Oliver described the FIP investment as a "structured cash flow" which FIP sold to investors in exchange for a lump-sum payment. (*Id*. at ¶ 16-17).

25.    The Giordano Plaintiffs, on the other hand, contend that FIP's business "consisted of nothing more than making usurious loans and operating a Ponzi scheme." (*Id.* at p. 2). They note that the U.S. Attorney's Office ultimately indicted FIP's principal, Scott Kohn, for conspiracy to commit wire and mail fraud in connection with the FIP scheme, and shut FIP down. (*Id.* at p. 2 and ¶ 26).

26.    The Giordano Plaintiffs allege that FIP stopped paying distributions to investors in 2018, and that the Giordano Plaintiffs have, or will be, forced to relinquish their life insurance policies now that they have lost the FIP income stream they relied upon to pay policy premiums. (*Id.* at ¶ 27-29).

### b.    The Hall Lawsuit

27.    The Plaintiffs in the Hall Lawsuit allege that Oliver and HWM solicited them to invest in a "Self-Directed IRA," which consisted of investing in FIP and using the cash flows that were supposed to be generated from that investment to pay premiums on a life insurance policy. (*See* Exhibit B, ¶ 14-16).

28.     The Halls allege that Oliver described the FIP investment to them as the "purchase [of] portions of loan payments created by FIP, which would allegedly generate an annual income stream for Plaintiffs[,]" but contend that FIP was actually nothing more than a "fraudulent scheme." (*Id*. at ¶ 14, 22, 25b.).

29.     The Halls allege that they were notified in March of 2018 that FIP's operations had been halted by the State and Federal governments and that it would cease making payments to investors, and they claim damages as a result. (*Id*. at ¶ 22, 31, 36, 40, 45 and 49).

### c.     *The Edwards Lawsuit*

30.     The Plaintiffs in the Edwards Lawsuit allege that Oliver advertised a "Self-Directed IRA," which involved purchasing "Structured Cash Flow Contracts" from FIP and using the payments from the FIP investment to pay premiums on life insurance policies. (*See* Exhibit D, ¶ 11, 14-15).

31.     The Complaint in the Edwards Lawsuit – like the Complaint in the Hall Lawsuit – contends that FIP was a "fraudulent scheme" that was halted by the State and Federal governments. (*Id.* at ¶ 28, 30b.).[6]

32.     The Plaintiffs allege that the FIP investment stopped making payments in April of 2018, and that they have sustained damages as a result. (*Id.* at ¶ 28, 37, 42, 46. 52 and 56).

### d.     *The Richardson Lawsuit*

33.     The Plaintiffs in the Richardson Lawsuit contend that Oliver solicited them to invest in FIP and represented that the cash flow from the FIP investment would pay for their life insurance premiums. (*See* Exhibit E, ¶ 15).

---

[6] The Plaintiffs in the Hall Lawsuit and in the Edwards Lawsuit are represented by the same counsel, and the Complaints filed in those two civil actions allege the same essential facts, and assert the exact same causes of action.

CASE NO. _____

34.     The Richardson Plaintiffs allege that the FIP investment was referred to as "Structured Cash Flows" and marketed to the Plaintiffs as a "Safe Side Fund," when it was actually an unregistered security within the meaning of Chapter 517 Florida Statutes, and "a scam being perpetrated by Scott Kohn, a previously convicted federal felon." (*Id*. at ¶ 16 and 20).

35.     The Richardson Plaintiffs allege that FIP ceased making payments in early 2018 and that, as a result, they have lost the majority of their investment in FIP, and may lose the benefits of their life insurance policy as well. (*Id*. at ¶ 23).

## THE POLICY

36.     The Policy, subject to its terms, exclusions and other provisions, provides coverage for NLG's "Agents" on a Claims Made and Reported basis for the period of May 1, 2019 to May 1, 2020. (*See* Exhibit C, MGPL 0002 05 19).

37.     Section I, Coverage A of the Policy contains the applicable Insuring Agreement, which states in pertinent part:

### SECTION I - INSURING AGREEMENTS

**A.     Agents Professional Liability**

The **Insurer** shall pay, on behalf of an **Agent**, **Damages** which an **Agent** becomes legally obligated to pay because of a **Claim** that is both made against an **Agent** and reported to the **Insurer** in writing during the **Certificate Period**, or as allowed by Section X — Notice Of Claim below, or during an Extended Reporting Period, if applicable, for a **Wrongful Act** or **Interrelated Wrongful Act** committed solely in the rendering of or failing to render **Professional Services** by an **Agent**, provided:

1.     Such **Wrongful Act** or any **Interrelated Wrongful Act** occurred on or after the **Retroactive Date** and before the end of the **Certificate Period**; and

2.     As of the inception date of this Policy as shown in the Master Policy Declarations, or the effective date of the **Agent's** enrollment for coverage hereunder as shown in the Certificate Of Insurance, no **Insured** had knowledge or reasonable basis upon which to anticipate that the **Wrongful Act** or any

CASE NO. _____

**Interrelated Wrongful Act** could result in a **Claim**.

(*Id.* at p. 1 of 14).

38.     Oliver constitutes an "Agent" as defined by the Policy:

**Agent** means an **Insured** person who:

1. Maintains an agent contract with the **Sponsoring Company** or becomes party to a written contract during the **Policy Period**;
2. Has elected to enroll for coverage under this Policy, either at the inception date of the **Policy Period** or prior to the expiration date of the **Policy Period**, and whose enrollment is on file with Calsurance Associates, Inc.;
3. Is shown as such in a Certificate Of Insurance;
4. Has paid the applicable premium;
5. Is licensed by all necessary federal, state or local governmental authorities to render **Professional Services** where both the **Agent** and client are located; and
6. Is properly registered as a representative of the **Broker/Dealer** with the Financial Industry Regulatory Authority (FINRA), if required for the rendering of **Professional Services**.

(*Id.* at p. 3 of 14).

39.     HWM and AEAG also constitute "Agents" pursuant to the definition of an "Insured" under the Policy (excerpted below), but solely with respect to their liability for Wrongful Acts by Oliver which would otherwise be covered under the Policy:

**H.     Insured** means:

**3.** A corporation, partnership or other business entity owned by and in which an Agent… has an ownership interest… but solely with respect to the liability of such organization as it arises out of an Agent… rendering of or failing to render Professional Services. Coverage hereunder shall not be afforded for any actual or alleged Wrongful Act… of such organization, but shall only apply to a Claim arising out of the actual or alleged Wrongful Act of an Agent[.]

(*Id.* at p. 4 of 14).

40.     The Policy defines the term "Claim," in pertinent part, as follows:

CASE NO. _____

  **E.** **Claim** means a written demand received by an **Insured** for **Damages** (including pleadings received in a civil litigation or arbitration) because of an actual or alleged **Wrongful Act**…

(*Id.* at p. 3 of 14).

  41. The Policy defines the term "Wrongful Acts" as follows:

  **U.** **Wrongful Act** means a negligent act or omission, including a **Personal Injury Act**, committed by an **Insured** in the rendering of or failing to render **Professional Services** to a client.

(*Id.* at p. 6 of 14).

  42. The Policy defines the term "Interrelated Wrongful Acts" as follows:

  **K.** **Interrelated Wrongful Acts** means any **Wrongful Acts** that are:

   **1**. Similar, repeated or continuous; or

   **2**. Connected by reason of any common fact, circumstance, situation, transaction, causality, event, decision or policy or one or more series of causally or logically related facts, circumstances, situations, transactions, causalities, events, decisions or policies.

(*Id.* at p. 4 of 14).

  43. The Policy defines the terms "Certificate Period" as follows:

  **D.** **Certificate Period** means the period of time from the inception date and time shown in the Certificate Of Insurance to the earlier of the expiration date and time shown in the Certificate Of Insurance or the effective date of the termination of this Policy.

(*Id.* at p. 3 of 14).

  44. The coverage provided by the applicable Insuring Agreement (excerpted in ¶ 37, above) is subject to the definition of "Professional Services" under the Policy, which states:

  **P.** **Professional Services** means:

   a. The solicitation, sale or servicing of the following:

    i. Life insurance, accident and health insurance, disability income insurance, long term care insurance and fixed or indexed annuities;

    ii. Employee benefit plans funded with those products listed herein in Subsections 1.a.;

CASE NO. _____

iii.   Workers' compensation as part of a 24-hour accident and health insurance product;

iv.   Financial planning, advice and consultation solely in connection with any of the products listed in Subsection 1; or

v.   Notary public services.

b.   The consultation with participants in an employee benefit plan in order to explain the provisions of such plan and the handling of day-today ministerial functions required by such plan, including without limitation; enrollment, record keeping and filing reports with governmental agencies.

(*Id.* at p. 5 of 14).

45.   The coverage provided by the applicable Insuring Agreement (excerpted in ¶ 37, above) for multiple "Claims" based upon or arising out of the same "Wrongful Act" or "Interrelated Wrongful Acts" is limited by the following Policy provision:

### SECTION IX – MULTIPLE CLAIMS

**A.**   All **Claims** based upon or arising out of the same **Wrongful Act**, **Interrelated Wrongful Acts**, **Management Wrongful Act**, or **Interrelated Management Wrongful Acts**, shall be considered a single **Claim** and each such single **Claim** shall be deemed to have been made on the earlier of the following:

**1.**   When the earliest **Claim** arising out of such **Wrongful Act, Interrelated Wrongful Acts, Management Wrongful Act,** or **Interrelated Management Wrongful Acts** was first made; or

**2.**   When notice was provided concerning a **Wrongful Act, Interrelated Wrongful Acts, Management Wrongful Act,** or **Interrelated Management Wrongful Acts** giving rise to such **Claim** under the Policy or any other policy;

regardless of whether before the **Policy Period** or the term of any preceding policy.

**B.**   Such single **Claim** shall be subject to one Limit Of Liability Each Claim and one Deductible, even if involving multiple claimants, **Insureds** or proceedings.

(*Id.* at p. 9 of 14).

46.   The Policy contains the following exclusions to coverage, among others:

### SECTION V – EXCLUSIONS

CASE NO. _____

This Policy shall not apply to, and the **Insurer** shall pay neither **Damages** nor **Claim Expenses** for, any **Claim**:

***

**E.**    Arising out of, based upon or in consequence of, directly or indirectly resulting from or in any way involving any actual or alleged conversion, commingling, use, handling, entrustment, safeguarding, inability to pay or failure to pay premiums, funds or any form of money;

***

**H.**    Arising out of, based upon or in consequence of, directly or indirectly resulting from or in any way involving any actual or alleged placement of a client's coverage or funds, directly or indirectly with any organization, entity or vehicle of any kind, nature or structure which is not licensed or authorized to do business in the state or jurisdiction with authority to regulate such business; however, this exclusion shall not apply to a **Claim** based upon or arising out of the placement of insurance or coverage with an eligible surplus lines insurer in the state or jurisdiction with authority to regulate such business;

**I.**    Arising out of, based upon or in consequence of, directly or indirectly resulting from or in any way involving any actual or alleged insolvency, receivership, conservatorship, liquidation, bankruptcy, failure or inability to pay of any company, organization, entity, vehicle or arrangement of any nature in which an **Insured** placed, recommended to be placed or obtained coverage or in which an **Insured** placed, recommended to be placed funds or an investment of any nature; however, this exclusion shall not apply to a **Claim** based upon or arising out of the placement, recommendation for placement or obtaining coverage with an insurance company rated by A.M Best's as B+ or better at the time when coverage is placed, recommended or obtained;

***

**P.**    Arising out of, based upon or in consequence of, directly or indirectly resulting from or in any way involving any actual or alleged guarantee, promise or warranty as to interest rates, market values, earnings, future values or future premiums or payments in connection with variable life insurance, variable annuities, scheduled premium annuities, mutual funds or **Securities**;

***

**U.**    Arising out of, based upon or in consequence of, directly or indirectly resulting from or in any way involving:

      1.    Promissory notes, viatical or life settlements, or any **Securities**

CASE NO. _____

backed by either viatical or life settlements;

\*\*\*

7.      Structured settlements; however, this exclusion shall not apply to a Claim arising out of or based upon the sale or servicing of the underlying product, if otherwise covered by this Policy.

(*Id.* at p. 6 through 8 of 14).

## <u>COUNT I – DECLARATORY JUDGMENT</u>
## (THERE IS NO COVERAGE FOR THE GIORDANO LAWSUIT OR THE HALL LAWSUIT BECAUSE THEY DO NOT ALLEGE WRONGFUL ACTS COMMITTED SOLELY IN THE RENDERING OF "PROFESSIONAL SERVICES")

47.      MAIC re-alleges and re-avers Paragraphs 1 through 46 above as if fully set forth herein.

48.      The Policy does not provide coverage for the Giordano Lawsuit or the Hall Lawsuit because neither suit constitutes a Claim "for a Wrongful Act or Interrelated Wrongful Act committed solely in the rendering of or failing to render Professional  Services by an Agent" – as required to trigger coverage under the Insuring Agreement of the Policy.

49.      The Policy defines Professional Services, in pertinent part, as: the "solicitation, sale or servicing" of certain insurance products or annuities, and financial planning, advice and consultation "solely in connection with" those insurance products or annuities.

50.      Here, both the Giordano Lawsuit and the Hall Lawsuit are based on allegations that Oliver – individually and through AEAG and/or HWM – recommended and sold the Giordano and Hall Plaintiffs investments in FIP. The respective Complaints allege that the FIP investment – which was described to those Plaintiffs as a "structured cash flow" or the purchase of "portions of loan payments" – was actually nothing more than a fraudulent scheme which failed when FIP's principal was indicted. (*See* Exhibit A ¶ 16-17 and 26-27; Exhibit B ¶ 14, 22 and 25b.).

CASE NO. _____

51.     The Plaintiffs in the Giordano Lawsuit and the Hall Lawsuit do not allege that the FIP investment was an insurance product or an annuity, and a plain reading of the Complaints shows that it was not. Accordingly, Oliver's recommendation and/or sale of FIP does not constitute "Professional Services," as defined by the Policy.

52.     Thus, the Giordano Lawsuit and Hall Lawsuit do not constitute Claims "for a Wrongful Act or Interrelated Wrongful Act committed solely in the rendering of or failing to render Professional Services by an Agent," as required to trigger coverage under the Insuring Agreement of the Policy.

53.     There exists a bona fide actual, present and practical need for the declaration of coverage under the Policy and the rights and obligations of MAIC.

54.     The rights and obligations of MAIC under the Policy are dependent upon the facts and the law applicable to the facts affecting coverage under the Policy.

55.     MAIC and the Defendants have an actual, present controversy in the subject matter described herein.

56.     All proper and present interests are before the Court by proper process.

**WHEREFORE**, Plaintiff, Markel American Insurance Company, respectfully requests that this Court enter judgment in its favor and: (a) declare that MAIC has no obligation under the Insuring Agreement to the Policy to defend or indemnify Oliver, HWM or AEAG in the Giordano Lawsuit; (b) declare that MAIC has no obligation under the Insuring Agreement to the Policy to defend or indemnify Oliver or HWM in the Hall Lawsuit; and (c) grant such other relief as the Court may deem just, proper and equitable under the circumstances.

CASE NO. _____

### COUNT II – DECLARATORY JUDGMENT
### (THE UNDERLYING LAWSUITS CONSTITUTE A SINGLE CLAIM
### THAT WAS FIRST MADE BEFORE THE INCEPTION OF THE POLICY)

57.     MAIC re-alleges and re-avers Paragraphs 1 through 46 above as if fully set forth herein.

58.     The Underlying Lawsuits are all based on or arise out of the same "Interrelated Wrongful Acts" – *i.e.*, Oliver's alleged recommendation and sale of an investment plan that involved purchasing FIP investments and life insurance policies and using the income stream from the FIP investments to pay premiums on the life insurance policies.

59.     Accordingly – pursuant to the provision of the Policy labeled "SECTION IX – MULTIPLE CLAIMS" – the Underlying Lawsuits constitute a single "Claim" which is deemed to have been made when the earliest Claim was first made or when notice of the earliest Wrongful Act or Interrelated Wrongful Act was first given (whichever occurred first).

60.     Here, the Richardson Lawsuit was filed on September 28, 2018. Thus, the Underlying Lawsuits are deemed to have been made on or before September 28, 2018.

61.     The Insuring Agreement of the Policy provides coverage for Claims made and reported within the "Certificate Period," which is May 1, 2019 to May 1, 2020.

62.     Thus, MAIC avers that the Underlying Lawsuits constitute a single Claim that was first made on, or prior to, September 28, 2018 – *i.e.* before the Certificate Period – and, accordingly, there is no coverage available for any of the Underlying Lawsuits under the Insuring Agreement of the Policy.

63.     There exists a bona fide actual, present and practical need for a declaration of coverage under the Policy and the rights and obligations of MAIC

CASE NO. _____

64.     The rights and obligations of MAIC under the Policy are dependent upon the facts and the law applicable to the facts affecting coverage under the Policy.

65.     MAIC and Defendants have an actual, present controversy in the subject matter described herein.

66.     All proper and present interests are before the Court by proper process.

**WHEREFORE**, Plaintiff, Markel American Insurance Company, respectfully requests that this Court enter judgment in its favor and: (a) declare that the Giordano Lawsuit, the Hall Lawsuit, the Edwards Lawsuit and the Richardson Lawsuit together constitute a single "Claim" under the Policy; (b) declare that MAIC has no obligation under the Policy to defend or indemnify Oliver, HWM or AEAG in the Giordano Lawsuit; (c) declare that MAIC has no obligation under the Policy to defend or indemnify Oliver or HWM in the Hall Lawsuit; and (d) grant such other relief as the Court may deem just, proper and equitable under the circumstances.

## COUNT III – DECLARATORY JUDGMENT
### (COVERAGE IS BARRED BY EXCLUSION E)

67.     MAIC re-alleges and re-avers Paragraphs 1 through 46 above as if fully set forth herein.

68.     Coverage for the Giordano Lawsuit and the Hall Lawsuit is barred by Exclusion E of the Policy, which provides that there is no coverage for any Claim:

> Arising out of, based upon or in consequence of, directly or indirectly resulting from or in any way involving any actual or alleged conversion, commingling, use, handling, entrustment, safeguarding, <u>inability to pay or failure to pay premiums, funds or any form of money</u>. (*See* Exhibit C, p. 6 of 14) (emphasis supplied).

69.     The Giordano Lawsuit and the Hall Lawsuit both arise out of, are based upon, directly or indirectly result from, or involve FIP's alleged failure to pay the promised income stream and/or structured cash flow payments to the Giordano and Hall Plaintiffs.

CASE NO. _____

70.     The Giordano Lawsuit and the Hall Lawsuit also both arise out of, are based upon, directly or indirectly result from, or involve the respective Plaintiff's alleged inability to pay the premiums on their life insurance policies due to the failure of FIP.

71.     Coverage for the Giordano Lawsuit and the Hall Lawsuit is therefore barred by Policy Exclusion E.

72.     There exists a bona fide actual, present and practical need for the declaration of coverage under the Policy and the rights and obligations of MAIC.

73.     The rights and obligations of MAIC under the Policy are dependent upon the facts and the law applicable to the facts affecting coverage under the Policy.

74.     MAIC and Defendants have an actual, present controversy in the subject matter described herein.

75.     All proper and present interests are before the Court by proper process.

**WHEREFORE**, Plaintiff, Markel American Insurance Company, respectfully requests that this Court enter judgment in its favor and: (a) declare that MAIC has no obligation under the Policy to defend or indemnify Oliver, HWM or AEAG in the Giordano Lawsuit pursuant to Exclusion E; (b) declare that MAIC has no obligation under the Policy to defend or indemnify Oliver or HWM in the Hall Lawsuit pursuant to Exclusion E; and (c) grant such other relief as the Court may deem just, proper and equitable under the circumstances.

## COUNT IV – DECLARATORY JUDGMENT
### (COVERAGE IS BARRED BY EXCLUSION H)

76.     MAIC re-alleges and re-avers Paragraphs 1 through 46 above as if fully set forth herein.

77.     Coverage for the Giordano Lawsuit and the Hall Lawsuit is barred by Exclusion H of the Policy, which provides that there is no coverage for any Claim:

CASE NO. _____

> Arising out of, based upon or in consequence of, directly or indirectly resulting from or in any way involving any actual or alleged placement of a client's… funds… with any organization, entity or vehicle of any kind, nature or structure which is not licensed or authorized to do business in the state or jurisdiction with authority to regulate such business. (*See* Exhibit C, p. 6 of 14).

78.     The Giordano Lawsuit and the Hall Lawsuit both arise out of, are based upon, directly or indirectly result from, or involve the respective Plaintiff's investment in FIP.

79.     The Giordano Lawsuit alleges that FIP was operating as a Ponzi scheme, and was shut down after the U.S. Attorney's Office indicted FIP's principal, Scott Kohn, for conspiracy to commit wire and mail fraud in connection with the FIP scheme. (*See* Exhibit A, p. 2 and ¶ 16).

80.     The Hall Lawsuit alleges that FIP was a "fraudulent scheme" and that FIP's operations were halted by the State and Federal governments. (*See* Exhibit B, ¶ 22 and 25b.).

81.     The Richardson Lawsuit – which contains Interrelated Wrongful Acts and, together with the other Underlying Lawsuits, constitutes a single Claim – alleges that the FIP investment was an unregistered security within the meaning of Chapter 517 Florida Statutes. (*See* Exhibit E, ¶ 16).

82.     At all times relevant hereto (from September 28, 2018 or earlier through the present) FIP was not registered with Florida's Division of Corporations and did not have a registered agent in Florida.

83.     These allegations establish that FIP was not licensed or authorized to do business in the state or jurisdiction with authority to regulate such business. Coverage for the Giordano Lawsuit and the Hall Lawsuit is therefore barred by Policy Exclusion H.

84.     There exists a bona fide actual, present and practical need for the declaration of coverage under the Policy and the rights and obligations of MAIC.

CASE NO. _____

85.     The rights and obligations of MAIC under the Policy are dependent upon the facts and the law applicable to the facts affecting coverage under the Policy.

86.     MAIC and Defendants have an actual, present controversy in the subject matter described herein.

87.     All proper and present interests are before the Court by proper process.

**WHEREFORE**, Plaintiff, Markel American Insurance Company, respectfully requests that this Court enter judgment in its favor and: (a) declare that MAIC has no obligation under the Policy to defend or indemnify Oliver, HWM or AEAG in the Giordano Lawsuit pursuant to Exclusion H; (b) declare that MAIC has no obligation under the Policy to defend or indemnify Oliver or HWM in the Hall Lawsuit pursuant to Exclusion H; and (c) grant such other relief as the Court may deem just, proper and equitable under the circumstances.

## COUNT V – DECLARATORY JUDGMENT
### (COVERAGE IS BARRED BY EXCLUSION I)

88.     MAIC re-alleges and re-avers Paragraphs 1 through 46 above as if fully set forth herein.

89.     Coverage for the Giordano Lawsuit and the Hall Lawsuit is barred by Exclusion I of the Policy, which provides that there is no coverage for any Claim:

> Arising out of, based upon or in consequence of, directly or indirectly resulting from or in any way involving any actual or alleged insolvency… bankruptcy, failure or inability to pay of any company, organization, entity, vehicle or arrangement of any nature… in which an Insured placed, recommended to be placed funds or an investment of any nature. (*See* Exhibit C, p. 7 of 14).

90.     The Giordano Lawsuit and the Hall Lawsuit both arise out of, are based upon, directly or indirectly result from, or involve the respective Plaintiff's investments in FIP, and FIP's alleged failure to pay the promised income stream and/or structured cash flow payments.

CASE NO. _____

91.     The Giordano Lawsuit and the Hall Lawsuit both specifically allege that FIP stopped paying distributions to investors in 2018 and that the Giordano and Hall Plaintiffs have been damaged as a result. (*See* Exhibit A, ¶ 27-28; Exhibit B, ¶ 22 and 24).

92.     Coverage for the Giordano Lawsuit and the Hall Lawsuit is therefore barred by Policy Exclusion I.

93.     There exists a bona fide actual, present and practical need for the declaration of coverage under the Policy and the rights and obligations of MAIC.

94.     The rights and obligations of MAIC under the Policy are dependent upon the facts and the law applicable to the facts affecting coverage under the Policy.

95.     MAIC and Defendants have an actual, present controversy in the subject matter described herein.

96.     All proper and present interests are before the Court by proper process.

**WHEREFORE**, Plaintiff, Markel American Insurance Company, respectfully requests that this Court enter judgment in its favor and: (a) declare that MAIC has no obligation under the Policy to defend or indemnify Oliver, HWM or AEAG in the Giordano Lawsuit pursuant to Exclusion I; (b) declare that MAIC has no obligation under the Policy to defend or indemnify Oliver or HWM in the Hall Lawsuit pursuant to Exclusion I; and (c) grant such other relief as the Court may deem just, proper and equitable under the circumstances.

## COUNT VI – DECLARATORY JUDGMENT
### (COVERAGE IS BARRED BY EXCLUSION Q)

97.     MAIC re-alleges and re-avers Paragraphs 1 through 46 above as if fully set forth herein.

98.     Coverage for the Hall Lawsuit is barred by Exclusion Q of the Policy, which provides that there is no coverage for any Claim:

CASE NO. _____

> Arising out of, based upon or in consequence of, directly or indirectly resulting from or in any way involving any actual or alleged guarantee, promise or warranty as to interest rates, market values, earnings, future values or future premiums or payments in connection with variable life insurance, variable annuities, [or] scheduled premium annuities[.] (*See* Exhibit C, p. 7 of 14).

99.     The Hall Lawsuit arises out of, is based upon, directly or indirectly results from, or involves Oliver's alleged guarantees, promises or warranties regarding the Halls' variable life insurance policy. Specifically, the Complaint in the Hall Lawsuit alleges that Oliver failed to "correctly represent the terms and scope" of a variable life insurance policy, and represented that the policy included a "Lifetime Income Rider" which would provide annual income when the Rider was actually a vehicle for policy loans. (*See* Exhibit B, ¶ 19 and 35 f.). Coverage for the Hall Lawsuit is therefore barred by Policy Exclusion Q.

100.    There exists a bona fide actual, present and practical need for the declaration of coverage under the Policy and the rights and obligations of MAIC.

101.    The rights and obligations of MAIC under the Policy are dependent upon the facts and the law applicable to the facts affecting coverage under the Policy.

102.    MAIC and Defendants have an actual, present controversy in the subject matter described herein.

103.    All proper and present interests are before the Court by proper process.

**WHEREFORE**, Plaintiff, Markel American Insurance Company, respectfully requests that this Court enter judgment in its favor and: (a) declare that MAIC has no obligation under the Policy to defend or indemnify Oliver or HWM in the Hall Lawsuit pursuant to Exclusion Q; and (b) grant such other relief as the Court may deem just, proper and equitable under the circumstances.

CASE NO. _____

## COUNT VII – DECLARATORY JUDGMENT
### (COVERAGE IS BARRED BY EXCLUSION U)

104.    MAIC re-alleges and re-avers Paragraphs 1 through 46 above as if fully set forth herein.

105.    Coverage for the Giordano Lawsuit and the Hall Lawsuit is barred by Exclusion U of the Policy, which provides that there is no coverage for any Claim arising out of, based upon or in consequence of, directly or indirectly resulting from or in any way involving promissory notes or structured settlements. (*See* Exhibit C, p. 8 of 14).

106.    The Giordano Lawsuit and the Hall Lawsuit both arise out of, are based upon, directly or indirectly result from, or involve the respective Plaintiff's investments in FIP.

107.    The FIP investment instrument – which is incorporated by reference in the Complaints filed in the Giordano Lawsuit and the Hall Lawsuit – is a promissory note or structured settlement.

108.    Coverage for the Giordano Lawsuit and the Hall Lawsuit is therefore barred by Policy Exclusion U.

109.    There exists a bona fide actual, present and practical need for the declaration of coverage under the Policy and the rights and obligations of MAIC.

110.    The rights and obligations of MAIC under the Policy are dependent upon the facts and the law applicable to the facts affecting coverage under the Policy.

111.    MAIC and Defendants have an actual, present controversy in the subject matter described herein.

112.    All proper and present interests are before the Court by proper process.

**WHEREFORE**, Plaintiff, Markel American Insurance Company, respectfully requests that this Court enter judgment in its favor and: (a) declare that MAIC has no obligation under the

CASE NO. _____

Policy to defend or indemnify Oliver, HWM or AEAG in the Giordano Lawsuit pursuant to

Exclusion U; (b) declare that MAIC has no obligation under the Policy to defend or indemnify

Oliver or HWM in the Hall Lawsuit pursuant to Exclusion U; and (c) grant such other relief as

the Court may deem just, proper and equitable under the circumstances.

     Dated: July 9, 2020.

          Respectfully submitted,

          **KAPLAN ZEENA LLP**
          *Attorneys for Markel American Insurance*
          *Company*
          2 South Biscayne Blvd.
          One Biscayne Tower, Suite 3050
          Miami, FL  33131
          Tel:  305-530-0800
          Fax:  305-530-0801

          By: */s/ James M. Kaplan*
             JAMES M. KAPLAN
             Florida Bar No. 921040
             James.Kaplan@kaplanzeena.com
             Elizabeth.Salom@kaplanzeena.com
             Service@kaplanzeena.com
             NOAH E. SNYDER
             Florida Bar No. 107415
             Noah.Snyder@kaplanzeena.com